UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH STEPHENSON,                          :

    Petitioner,                          :

v.                                          :          Case No. 3:12-cv-1233 (RNC)

CONNECTICUT,                                :

    Respondent.                          :

RULING AND ORDER

Petitioner was convicted in state court of robbery in the third degree and two counts of larceny in the fifth degree. After the judgment was affirmed on appeal he brought this habeas case raising various claims. The claims were dismissed on the merits and petitioner's request for leave to amend his petition to add new claims was denied on the ground that the new claims were procedurally defaulted. The Court of Appeals has remanded for a determination of whether the new claims, although procedurally defaulted, can be adjudicated on the merits based on petitioner's claim that he is actually innocent of third degree robbery. After considering petitioner's evidence of actual innocence in light of the evidence in the record as a whole, I conclude that he has not met his burden of establishing a credible, compelling claim of actual innocence and therefore dismiss the petition.

I.

On petitioner's direct appeal, the Connecticut Appellate Court summarized the relevant events shown by the state's

evidence:

On August 23, 2006, at approximately 1 p.m., Donovan Sinclair, a store detective for the Macy's department store in the Stamford Town Center Mall, received notice regarding a suspicious individual in the Polo department at the store.  Sinclair then observed, on the security camera, an individual later identified as the defendant in the Polo department.  The defendant was carrying a white shopping bag under his arm and was picking out a variety of items. Sinclair monitored the defendant for approximately forty-five minutes and observed him taking items of clothing from the racks, folding them and bending down as if putting the items into the bag. The defendant appeared nervous and was looking around.  Although Sinclair did not see a tool in the defendant's hands, it looked like he had something in his hands.  While observing the defendant, Sinclair called upon store manager Steve Johnson for assistance. Johnson remained in the security office to monitor the security camera while Sinclair followed the defendant as he exited the store.  When Sinclair reached the defendant, he identified himself as a Macy's store detective and indicated that he wanted to talk to the defendant about the merchandise in the bag. A "heated argument" between Sinclair and the defendant ensued, during which some pushing and shoving took place.  Sinclair attempted to handcuff the defendant but was only able to get one handcuff on him. Johnson and two other individuals from Macy's came outside and assisted Sinclair in pinning the defendant against a wall until the police arrived and placed the defendant in a police car.  When Sinclair returned to the store, he identified six items from Macy's that had been recovered from the shopping bag.  The total cost of these items was $356.49.  In addition to these items, the police recovered three pairs of eyeglasses, totaling approximately $600, from the Macy's bag. Stephen Singer, the retail manager at a LensCrafters store in the Stamford Town Center mall, later identified the three pairs of eye-glasses as belonging to that store.  Singer checked the store records and determined that the eyeglasses had been accounted for when the store had closed the night before, and that they had not been sold by any-one at the store on August 23, 2006.  Singer also re-called that the defendant had been in the store between approximately 10:30 a.m. and 11:30 a.m. that morning.

State v. Stephenson, 131 Conn. App. 510, 513-15 (2011).

Petitioner's claim of actual innocence derives from a letter signed by Sinclair, the Macy's store detective. At the jury trial, Sinclair testified that he saw petitioner leave the store with a bag containing stolen merchandise, followed him and asked him to stop so he could inspect the contents of the bag. Petitioner angrily denied stealing and continued walking. Sinclair pinned him against a fence across the street from the store and a heated argument ensued. Trial Transcript, Oct. 27, 2008, at 88-90 (ECF No. 78). Sinclair noticed that petitioner had his hand "in a ball" and asked him if he was armed. Id. at 89. Petitioner responded that he was carrying a knife. Id. at 88-89. There was some "pushing and shoving" because petitioner was trying to leave and Sinclair was trying to recover the merchandise. Id. at 88, 90. If Sinclair had been able to recover the merchandise, he would have let petitioner leave. Id. at 90. Sinclair attempted to calm petitioner and handcuff him for his own safety but Sinclair was only able to get one handcuff on him prior to the arrival of the police. Id. at 90-91.

Sinclair's testimony that there was some pushing and shoving as he tried to stop petitioner from leaving with the merchandise proved to be important to the state's case. Initially, petitioner was charged with second degree robbery, which requires proof that the accused "display[ed] or threaten[ed] the use of .

3

. . . a deadly weapon or a dangerous instrument."  Conn. Gen. Stat.

§ 53a-135.  After the state presented its case, the trial judge

granted a motion to dismiss the second degree robbery charge but

permitted the state to proceed on a charge of third degree

robbery, which requires use or threatened use of physical force.[1]

A motion for judgment of acquittal on the charge of third degree

robbery was denied.  Referring to Sinclair's testimony, the trial

judge stated that there was evidence of "some pushing and shoving

between [Sinclair] and the defendant after Mr. Sinclair followed

the defendant outside the store."  Trial Transcript, Oct. 29,

2008, at 51-58.

The letter that provides the genesis for petitioner's claim

of actual innocence was submitted to the state trial judge after

the trial but before petitioner's sentencing.  The lengthy

letter, ostensibly written by Sinclair, makes it appear that

petitioner is innocent of all the charges and blames the police

for encouraging Sinclair to exaggerate or lie about what

happened.

With regard to the larceny convictions, the letter explains

that the items of clothing found in the bag were not stolen.  The

---

[1] A person is guilty of robbery in the third degree if in
the course of committing a larceny, he "uses or threatens the
immediate use of physical force upon another person for the
purpose of . . . [p]reventing or overcoming resistance to the
taking of the property or the retention thereof immediately after
the taking." Conn. Gen. Stat. § 53a-133.

letter states:

> I was working as a security guard for Macy's store
> in Stamford when I received a call about someone acting
> suspiciously.  I watched [petitioner] on the camera but
> I did not record everything I actually saw him do.  I
> told the court that I saw when [petitioner] entered the
> Polo department and went to the sales counter where he
> took out some polo clothes and a belt out of a bag he
> had brought in but then put some of them back in the
> bag when he appeared that he could not find the
> receipts.  Even though I told the court that I later
> did find some Macy's receipts in the pockets of one of
> the pant [sic], I should have told them that those
> receipts did match up with the clothes that were
> assumed stolen.  I did not mention it at the time
> because the police had already did [sic] their report
> and I had not searched the clothes until later on when
> they left.  The police had also told me to exaggerate
> the incident in my report.  * * * Even though I saw
> [petitioner] put back the clothes that he appeared to
> be messing with in the vide [sic], I did not record it
> when he put those clothes, including a blue and white
> stripe shirt that he had folded, back on a clothing
> shelf before he exited.  I only went outside to
> apprehend him just to check the bag.  I could not see
> what he was doing behind the clothing rack in the store
> so I just wanted to check him out.  It was only when he
> argued with me outside on the street and said he would
> sue me that I became very angry and went along with the
> police.  I was worried about my job at the time and
> wanted to make sure that the man would be convicted.  I
> was later let go from Macy['s] as a result of this and
> another incident because Macy's did not want to get
> sued for mistaken arrests.

With regard to the third degree robbery conviction, the

letter states:

> I admit now that the man did not touch me in any way at
> all.  In fact it was I that pushed and shoved him
> against the fence across from the store.  He only
> pulled his hand away so I could not handcuff him
> properly.  He gave me the bag he had when I asked for
> it and I thought the Jury would understand that there
> was only arguing involved and no force whatsoever.
> Even though we had a heated argument I remember clearly

that the man did not fight with me. I feel very badly
now that the man was convicted for something that he
did not do and I cannot sleep properly knowing that I
may have said something that was taken in the wrong way
and sent someone to jail.

According to the letter, when Sinclair testified before the jury,
it was his intention "to convey the fact that there was no
fighting whatever and that it was a minor incident." ("I did not
realize that the jury would take my statement as seriously as
they did.").

The letter closes with the following statement:

Please understand that nobody has asked me or pressured
me to write this letter to you but I am really bothered
by the whole incident. I have kids to take care of and
even though I may not know that man, he is somebody's
child and just as I would not like my kids to go to
jail for a lie or mistake, this is the same way I feel
about what has happened here. I hope that you will
understand that I have to set the record straight and
clear my conscience. I believe that there is a God and
that we will have to give an account to him one day.
Please feel free to call or contact me if you need to
talk to me. I am also willing to come to court if
necessary. Thank you.

After the letter was submitted, the state judge sentenced
petitioner to three years' imprisonment, execution suspended
after nine months, followed by three years of probation and one
hundred hours of community service.

II.

In accordance with the order of the Court of Appeals, an
evidentiary hearing has been held. Sinclair was the only witness
called to testify. Regarding the underlying events at Macy's, he

6

testified that he saw petitioner placing items from clothing racks into a bag.  Evid. Hr'g Transcript 6-7 (ECF No. 100). After petitioner left the store, Sinclair followed.  Id. at 8. Sinclair attempted to speak with petitioner but he kept walking. Id.  Sinclair followed petitioner across the street and restrained him.  Id. at 9.  Sinclair pinned petitioner up against a fence and took the shopping bag.  Id. at 9-10.  With regard to his trial testimony that there had been "some pushing and shoving," Sinclair testified that he did all the pushing and shoving and had no intention to suggest to the jury that petitioner had pushed or shoved him in any way.  Id.

At the evidentiary hearing, Sinclair conceded that he did not write the letter submitted to the state judge.  The letter was written by petitioner's trial counsel.  Id. at 15-16. Sinclair explained that petitioner's trial counsel contacted him after the trial.  Id.  Petitioner's trial counsel arranged to interview him and then, about two weeks later, asked him to sign a letter.  Id.  Sinclair also conceded that the letter is inaccurate insofar as it indicates that petitioner is innocent of larceny.  Id. at 13-15.

On cross-examination, counsel for the state showed Sinclair an internal Macy's report of the incident.  Sinclair testified that he prepared the report pursuant to Macy's requirement that a truthful report be prepared within 24 hours.  Id. at 20.  In his

handwritten report, Sinclair wrote that petitioner had threatened

him with a knife.  Id. at 20-21.  The report states:

> I got him Pin against the Fence, He was trying to get
> away by saying to me he has a knife which he had in his
> hand at the Time.  I attempted to handcuff the
> gentleman and Recover the merchandise.  Steve Johnson
> [the store manager] and other associates came out of
> the store and help me with the apprehension.  We had
> him Pin against The Fence till the Stamford Police was
> called and arrived.  The Police department arrived and
> handcuff the gentleman, Recover the (Wire Cutter's,)
> (Knife) and our merchandise.  They put the gentleman
> into the Police Car and took him away.

On re-direct, Sinclair testified that in the course of

petitioner's trial, he informed the trial judge that the

responding police officers had asked him to lie under oath about

petitioner threatening him with the knife.  Id. at 23.[2]

Referring to the underlying events, Sinclair testified at the

evidentiary hearing that when he asked petitioner if he had a

knife, petitioner said he had a pocket knife, removed the knife

from his pocket and gave it to Sinclair.  Id. at 25.  Finally,

Sinclair testified that he read only part of the letter to the

state judge before signing it at the request of petitioner's

trial counsel.  Id. at 31.

---

[2] The trial transcript shows that after Sinclair testified
for the state, he was called as a defense witness.  Outside the
presence of the jury, he testified that two of the investigating
police officers had "asked [him] to lie" about whether petitioner
had shown him a knife.  See Trial Transcript, Oct. 29, 2008, at
194-202.  The trial judge excluded the testimony on relevance
grounds, finding that Sinclair had been truthful in his direct
testimony.

To use the actual innocence "gateway," <u>Rivas v. Fischer</u>, 687 F.3d 514, 539 (2d Cir. 2012), a habeas petitioner must present "a claim of actual innocence [that is] both 'credible' and 'compelling,'" <u>id.</u> at 541 (quoting <u>House v. Bell</u>, 547 U.S. 518, 521, 538 (2006)). "For the claim to be 'credible,' it must be supported by 'new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.'" <u>Id.</u> (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" <u>Id.</u> (quoting <u>House</u>, 547 U.S. at 538).

For purposes of the actual innocence exception, "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 ("The miscarriage of justice exception is concerned with actual as compared to legal innocence."); <u>see also</u> <u>Murden v. Artuz</u>, 497 F.3d 178, 194 (2d Cir. 2007) ("Actual innocence requires 'not legal innocence but factual innocence.'" (quoting <u>Doe v. Menefee</u>, 391 F.3d 147, 162

9

(2d Cir. 2004))). "Because credible claims of actual innocence are 'extremely rare,' federal court adjudication of constitutional challenges by petitioners who may be actually innocent prevents miscarriages of justice, but does not threaten state interests in finality." Menefee, 391 F.3d at 161 (quoting Schlup, 513 U.S. at 321-22).

The state argues that petitioner cannot use the actual innocence gateway because, at a minimum, he is guilty of larceny. However, the Court of Appeals has directed me to determine whether petitioner has a viable claim of actual innocence with regard to his conviction for third degree robbery. In accordance with the order of the Court of Appeals, it is necessary to determine whether petitioner has a credible, compelling claim that he is actually innocent of that charge. For reasons explained below, I conclude that he has failed to meet his burden under either prong of the actual innocence standard.

Petitioner's reliance on the letter submitted to the state judge is misplaced. The letter is not what it appears to be on its face. Though the letter gives the impression that Sinclair acted on his own in writing to the judge, I credit his testimony at the evidentiary hearing that petitioner's trial attorney contacted him, asked to interview him and subsequently prepared the letter for him to sign. I also credit his testimony that he read only part of the letter before signing it. Notably, the

letter misspells Sinclair's name.

The provenance of the letter detracts significantly from its credibility. It is one thing for a witness to come forward on his own initiative because he fears his testimony has caused a miscarriage of justice; it is another for the defendant's lawyer to contact the witness, encourage him to recant and obtain his signature on a letter. The letter submitted to the state judge appears to have been crafted with this in mind. The letter flatly states, "Please understand that nobody has asked me or pressured me to write this letter to you but I am really bothered about the whole incident." In view of Sinclair's testimony at the evidentiary hearing, the assurance given to the state judge that nobody had asked Sinclair to write the letter is misleading to say the least.

On the record before me, I conclude that the letter, insofar as it purports to accurately recount the underlying events, is not trustworthy. The letter conveys the impression that as far as Sinclair is concerned, petitioner is actually innocent of all the charges against him. At the evidentiary hearing, however, Sinclair maintained that petitioner *is* guilty of larceny.

Moreover, the letter's assertions that petitioner used no force whatsoever are highly implausible. According to the letter, Sinclair's encounter with petitioner was a "minor" incident, in which petitioner "did not touch [Sinclair] in any

way at all" and "gave" Sinclair the bag containing the stolen

merchandise when Sinclair asked him to do so.  These assertions

are at odds with Sinclair's trial testimony, as well as his

incident report, both of which depict petitioner using or

threatening to use force in order to get away with the stolen

merchandise.

The assertions in the letter are also at odds with the trial

testimony of other eyewitnesses.  The store manager, Stephen

Johnson, testified that he and two sales associates tried in vain

to help Sinclair in his confrontation with petitioner.  Johnson

testified that both Sinclair and petitioner were "riled up,"

"clearly nervous and agitated."  Trial Transcript, Oct. 29, 2008,

at 34-35.  Petitioner was "[w]aiving his arms, flailing,

screaming just let me go.  Stop, let me go."  Id. at 35.

Sinclair had one handcuff on petitioner.  Id.  Even with the help

of Johnson and the two sales associates, Sinclair still could not

put both handcuffs on him.

The responding police officers also testified.  One officer

testified that when he arrived, Sinclair had petitioner up

against the fence and was trying to handcuff him.  Petitioner was

extremely agitated, aggressive and yelling.  Id.  Another officer

testified that when he arrived, petitioner "was fighting back

with these three other males." Trial Transcript, Oct. 27, 2008,

at 134.  "[T]hey were attempting to handcuff him and he was

attempting not to be handcuffed." Id. at 135.

In addition, the letter's assertions that this was a "minor" incident in which petitioner "did not touch [Sinclair] in any way at all" and "gave" Sinclair the bag on request are belied by Sinclair's testimony at the evidentiary hearing. Sinclair testified that his confrontation with petitioner was "upsetting" and "still bothers [him] a lot" a decade later. At the hearing, Sinclair explained that his confrontation with petitioner continues to bother him because it was the first time he ever had to pin somebody against a fence and "it took four of us to stop him, you know?"

Petitioner submits that although the letter is admittedly inaccurate in other key respects, it is trustworthy on the central point that petitioner did no pushing or shoving. At the evidentiary hearing, Sinclair did confirm that only he did any pushing and shoving as stated in the letter. As just discussed, however, his testimony in this respect is inconsistent with the thrust of his trial testimony and the testimony of the other eyewitnesses.

Petitioner submits that Sinclair's hearing testimony on the subject of pushing and shoving merely clarifies his trial testimony. It seems highly unlikely that when Sinclair testified about pushing and shoving at the jury trial he wanted the jury to understand that he was the only one who did any pushing or

13

shoving.  Whether petitioner engaged in pushing and shoving so as

to be guilty of third degree robbery was a key issue for the jury

to resolve.  No doubt the jury understood Sinclair to be saying

there was pushing and shoving by petitioner; the presiding judge

understood Sinclair to be saying as much.  That Sinclair actually

meant no such thing is hard to believe in view of the common

sense meaning of the words he used and the importance of his

testimony to the state's case.

The state submits that Sinclair's new testimony in support

of petitioner's claim of actual innocence does not satisfy the

standard of reliability required to support a claim of actual

innocence.  I agree that variations in Sinclair's accounts

detract significantly from the reliability of his testimony.

Since the date of the incident, Sinclair has provided four

versions that conflict on key points.  His contemporaneous report

of the incident states that petitioner "was trying to get away by

saying to me he had a Knife. Which he had in his hand at the

time."  The report states that Sinclair and his colleagues had to

pin petitioner against the fence until the police arrived, at

which time the police handcuffed petitioner and recovered the bag

containing the stolen merchandise.  At trial, he testified there

was pushing and shoving as he struggled to prevent petitioner

from leaving with the stolen merchandise, but he denied seeing a

knife and said petitioner merely responded in the affirmative

14

when asked whether he was armed.  The letter Sinclair signed at
the request of petitioner's trial counsel for submission to the
state judge denies that petitioner stole anything or offered any
resistance whatsoever and states petitioner simply "gave" him the
shopping bag.  At the evidentiary hearing, Sinclair testified
that petitioner did engage in shoplifting but did not engage in
pushing or shoving and when he asked petitioner whether he had
any weapons, petitioner handed over a knife.

In addition to conflicting with his previous versions,
Sinclair's new testimony is internally inconsistent.  At the
evidentiary hearing, in response to questions by petitioner's
counsel, Sinclair appeared to disavow his incident report insofar
as it indicates petitioner used or threatened to use force, yet
he also testified that the report is true.  He seemed to confirm
that he pushed and shoved petitioner while trying to pin him
against the fence, yet he also testified that he did not put a
hand on him.  Sinclair's seeming inability to provide coherent
testimony undercuts the probative value of his new testimony as
support for petitioner's claim.

Sinclair's new testimony must be viewed with suspicion
because he is a recanting witness who appears to have been
prompted to recant by petitioner's trial counsel.  "[A] recanting
victim presents a sympathetic scenario for a claim of actual
innocence."  Menefee, 391 F.3d at 173.  But "recantation

15

testimony is properly viewed with great suspicion." Dobbert v.
Wainwright, 468 U.S. 1231, 1233-34 (1984) (Brennan, J.,
dissenting from denial of certiorari); see also Ortega v. Duncan,
333 F.3d 102, 107 (2d Cir. 2003)(noting that recantation
testimony must be looked upon with the utmost suspicion, although
its lack of veracity cannot, in and of itself, establish whether
testimony given at trial was in fact truthful).  Recantations
"upset[ ] society's interest in the finality of convictions,
[are] very often unreliable and given for suspect motives, and
most often serve [ ] merely to impeach cumulative evidence rather
than to undermine confidence in the accuracy of the conviction."
Dobbert, 468 U.S. at 1233-34.

It is petitioner's burden to show that Sinclair's new
testimony is sufficiently reliable to support a credible claim of
actual innocence.  This burden has not been met.  Petitioner
suggests that Sinclair is merely clarifying his trial testimony
on the issue of pushing and shoving consistent with his letter to
the state judge.  But the letter raises more questions than it
answers.

The letter explained that Sinclair's conscience bothered him
during and after the trial and finally impelled him to write
because (1) the police told him to exaggerate the incident in his
report, (2) he failed to reveal in his report or at trial that he
had found receipts matching the items of clothing in the bag, (3)

he was pressured to testify falsely that petitioner tried to cut

him with the knife, and (4) he inadvertently misled the jury that

petitioner used force.[3]

This explanation for Sinclair's decision to contact the

state judge in order to help petitioner obtain relief from his

convictions is not well-founded.  The letter's assertion that the

responding police officers told Sinclair to exaggerate his report

is unsupported by other evidence in the record and Sinclair

testified at the evidentiary hearing that his report is true.

The letter's assertion that after the police prepared their

report Sinclair found receipts matching the items of clothing in

the bag is contrary to his testimony at the evidentiary hearing

---

[3] The letter states:
> Even though I told the court that I later did
> find some Macy's receipts in the pockets of
> one of the pant [sic], I should have told
> them that those receipts did match up with
> the clothes that were assumed stolen.  I did
> not mention it at the time because the police
> had already did [sic] their report and I had
> not searched the clothes until later on when
> they left.  The police had also told me to
> exaggerate the incident in my report.  I
> later testified to your honor how the two
> police officers who wrote the report were
> telling me to lie before the Jury and to say
> that the man pulled out a knife and tried to
> cut me.  Also I was not asked anything about
> the receipts when I was being questioned in
> court.  My conscience was and still is
> bothering me and I did not like what they
> wanted me to do.  I told the truth that the
> man did not do anything but have a heated
> argument with me and said he was going to sue
> since he did not steal anything.

that petitioner is guilty of larceny.  The letter's assertion

that the police urged Sinclair to testify falsely is inflammatory

but largely beside the point because he provided no such

testimony to the jury.  The letter's assertion that petitioner

"did not do anything but have a heated argument and said he was

going to sue since he did not steal anything," insofar as it

denies that petitioner used or threatened to use physical force,

is belied by Sinclair's incident report and trial testimony and

the testimony of the other eyewitnesses.

On the existing record, I find that Sinclair's motivation

for undertaking to help petitioner obtain relief from his

convictions has not been established.  It is possible Sinclair

sympathizes with petitioner's plight as a result of his

discussions with petitioner's trial counsel after the trial.  The

record indicates that petitioner's convictions caused him to be

placed in deportation proceedings.  EFC No. 80-1 at 8.  Perhaps

petitioner's trial counsel informed Sinclair that the convictions

could result in petitioner's deportation and this led Sinclair to

agree to sign the letter to the state judge.  Whether and to what

extent petitioner's trial counsel may have influenced Sinclair in

this regard cannot be determined on the present record, however.

Petitioner's trial counsel did not testify at the hearing.

After careful consideration, I conclude that, regardless of

Sinclair's motives, his letter to the state judge and new

testimony do not provide reliable support for petitioner's claim
of actual innocence.  Because the proffered evidence does not
satisfy the reliability requirement, petitioner has failed to
satisfy his burden of establishing a credible claim of actual
innocence under the first prong of the applicable standard.

I also conclude that petitioner has failed to meet his
burden of establishing a compelling claim of actual innocence as
required by the second prong.  If a properly instructed jury were
to fairly consider Sinclair's letter to the state judge and his
new testimony along with the rest of the evidence in the record,
I do not believe it is more likely than not that no reasonable
juror would find petitioner guilty of robbery in the third
degree.  I think it is far more likely that such a jury would
discount the letter and new testimony, credit Sinclair's
contemporaneous report of the incident and trial testimony,
credit the trial testimony of the other eyewitnesses and
ultimately find petitioner guilty beyond a reasonable doubt.

Viewed as a whole, the evidence would easily permit a jury
to find the following facts.  Petitioner was trying to escape
with a bag containing stolen merchandise worth almost $1,000;
when Sinclair tried to stop him in order to inspect the contents
of the bag, he angrily denied stealing and refused to surrender
the bag; his attempt to get away with the stolen merchandise
caused Sinclair to try to pin him against the fence across the

street from the store, a first for Sinclair; he physically resisted and continued to try to get away with the stolen merchandise such that Sinclair had to struggle to contain him and was unable to handcuff him; his physical resistance made it necessary for Sinclair to push and shove him against the fence; he prevented Sinclair from handcuffing him even with the assistance of Johnson and two sales associates; he was still resisting their efforts to handcuff him when the police arrived; and he was finally handcuffed by the police, at which time the police recovered the bag containing the stolen merchandise.

On the basis of these facts, a properly instructed jury would likely find petitioner guilty of third degree robbery in that he used or threatened to use physical force in an attempt to overcome resistance to his retention of the stolen merchandise. I cannot say it is more likely than not that no reasonable juror would do so.

IV.

Accordingly, the petition is dismissed without leave to amend to add the procedurally defaulted claims.

The Clerk may enter judgment and close the case.

So ordered this 8th day of January 2018.

/s/
Robert N. Chatigny
United States District Judge